UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES GREGORY III, on behalf of himself and all others similarly situated,<br><br>              Plaintiff,<br><br>    v.<br><br>BAXTER INTERNATIONAL INC., ROBERT L. PARKINSON, JR., and ROBERT M. DAVIS,<br><br>              Defendants. | CIVIL ACTION No.<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, by his attorneys, on behalf of himself and all others similarly situated, alleges the following based upon the investigation of Plaintiff's counsel, except as to allegations specifically pertaining to Plaintiff, which are based on personal knowledge. The investigation of counsel included, among other things, a review of Baxter International Inc. ("Baxter" or the "Company") public filings with the United States Securities and Exchange Commission ("SEC"), press releases issued by the Company, media, news and analyst reports about the Company, and publicly available trading data relating to the price and volume of Baxter securities.

## I.      INTRODUCTION

1.      This is a federal class action brought on behalf of a class consisting of all persons who purchased Baxter securities between September 16, 2009 through May 3, 2010, inclusive (the "Class Period").

2.      This action is a securities fraud action brought under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5

promulgated thereunder by the SEC by plaintiff on behalf of all those who purchased Baxter securities during the Class Period to recover damages caused to the Class by defendants' violations of the securities laws.

3.      During the Class Period, defendants represented that demand for Baxter's products was strong and the Company was "well-positioned" for growth.  But, in fact, the Company was losing business to lower priced products offered by competitors, its relationships with its customers was materially deteriorating and the Company was losing material market share.  Further, defendants failed to disclose that Baxter was not complying with the terms of a June 2006 consent decree it had entered into with the U.S. Food and Drug Administration ("FDA") to remediate material defects with the Company's Colleague infusion pump.

4.      On April 22, 2010, the Company reported its first quarter 2010 financial results and lowered its revenue and earnings outlook for 2010. Baxter disclosed that due to continuing pressures in its critical plasma-derivative products business, including a loss in market share, as well as the impact of healthcare reform legislation, it was reducing its revenue guidance for 2010 to revenue growth in the range of 1% to 3%, down from a previous range of 5% to 7%.  Specifically, the Company disclosed it was reducing its revenue guidance for its plasma products *from growth* in the mid-to-high single-digit range *to a decline in the mid-single-digit range* and it was reducing its revenue guidance for its antibody therapy products *from growth* in the mid-single-digit range *to a decline in the 10% to 15% range.*

5.     Further, Baxter reduced its earning guidance for 2010 from earnings per diluted share of $4.20 to $4.28, to $3.92 to $4.00 per diluted share, a decline of approximately 5-8%.

6.     On this news, Baxter's stock declined $7.82 per share to close at $51.13 per share on April 22, 2010, a one-day decline of approximately 13%, on heavier than usual volume.  Baxter's stock declined a further $3.54 per share over the next two trading days to close at $47.59 per share on April 26, 2010.

7.     Then, on May 3, 2010, after the close of trading, Baxter announced that the FDA had ordered the Company to recall its Colleague pumps pursuant to its June 2006 consent decree. In response, the FDA issued its own release concerning Baxter's recall, indicating the action was necessary due to the Company's "*longstanding failure* to correct many serious problems with the pumps." (Emphasis added).

8.     On this news, Baxter's stock further declined $2.42 per share to close at $45.08 per share on May 4, 2010, a one-day decline of approximately 5%, on high volume.

9.     On May 21, 2010, Morgan Stanley made the following statements concerning Baxter:

What Happened: The 2009-10 Plasma Market

Post-quarter diligence confirms that Baxter's aggressive channel strategy was the primary driver of heavy share loss . . . .

Although the strategy was fundamentally sound, it was imperfectly executed, and Baxter failed to see or respond to adverse changes in the marketplace that left the company competitively exposed.  *Over the last 12-18 months, a variety of dynamics have catalyzed share loss,* including (i) Baxter's 2009 price increases that were not matched by competitors, (ii) strained relationships with G[roup] P[urchasing] O[rganization]s over price and contract terms including admin fee reduction and removal

clotting factor products from contract, and (iii) weaker end market demand . . . Baxter lost favor with key decision makers in the hospital channel. When slower demand combined with more robust supply left excess product on the market, GPOs steered their members away from Baxter and toward other players.

(Emphasis added).

10.     In July 2010, Defendant Parkinson stated on a conference call with investors that "we acknowledge and as we had discussions subsequent I think people recognized that *we have over the last six months incurred share loss in the US in the antibody therapy area, largely because of the pricing premium that we had established with our GAMMAGARD product. We experienced some amount of share loss starting probably late last year and certainly into 2010.* And as we acknowledged on the last call, we had made a decision to implement what we referred to as pricing touchups to make sure that we stemmed the share loss to competition due to lower pricing." (Emphasis added).

## II.     JURISDICTION AND VENUE

11.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.  This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §1331.

12.     Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b).

13.     In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but

not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

### III.    THE PARTIES

14.    Plaintiff purchased Baxter common stock as described in the attached certification and was damaged thereby.

15.    Defendant Baxter, purports to develop, manufacture, and market products for people with hemophilia, immune disorders, infectious diseases, kidney disease, trauma, and other chronic and acute medical conditions. The Company operates in three segments: BioScience, Medication Delivery, and Renal. The Company is based in Deerfield, Illinois.

16.    According to the Company's 2009 Annual Report filed with the SEC on Form 10-K, Baxter's BioScience business "processes recombinant and plasma-based proteins to treat hemophilia and other bleeding disorders; plasma-based therapies to treat immune deficiencies, alpha 1-antitrypsin deficiency, burns and shock, and other chronic and acute blood-related conditions; products for regenerative medicine, such as biosurgery products; and vaccines."

17.    Defendant Robert L. Parkinson, Jr. ("Parkinson") is, and at all relevant times was, Chairman of the Board, President and Chief Executive Officer ("CEO") of Baxter.

18.    Defendant Robert M. Davis ("Davis") was, at all relevant times, Chief Financial Officer ("CFO") and Corporate Vice President of Baxter.

19.    Defendants Parkinson and Davis are referred to herein as the "Individual Defendants." The Individual Defendants, because of their positions with the Company,

possessed the power and authority to control the contents of Baxter's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, but not to the public, each of these defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations which were being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## IV.    CLASS ACTION ALLEGATIONS

20.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of a class of all persons who purchased the securities of Baxter during the period from September 16, 2009 through May 3, 2010, inclusive (the "Class").

21.    The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiff at the present time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds of members of the Class located throughout the United States. Throughout the Class Period, Baxter was actively traded on the NYSE in an efficient market.

22.     Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have sustained damages because of defendants' unlawful activities alleged herein.   Plaintiff has retained counsel competent and experienced in class and securities litigation and intends to pursue this action vigorously. The interests of the Class will be fairly and adequately protected by plaintiff.   Plaintiff has no interests which are contrary to or in conflict with those of the Class that plaintiff seeks to represent.

23.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.   Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

24.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by defendants' acts and omissions as alleged herein;

(b)     whether defendants misstated and/or omitted to state material facts in their public statements and filings with the SEC;

(c)     whether defendants participated directly or indirectly in the course of conduct complained of herein; and

(d)     whether the members of the Class have sustained damages and the proper measure of such damages.

## V.    FALSE AND MISLEADING STATEMENTS

25.    On September 16, 2009, Baxter issued a press release that stated, in part, the following:

> Over its five year long-range plan period, Baxter expects to increase sales approximately 7 to 8 percent (excluding the impact of foreign currency), grow earnings per share in the 11 to 13 percent range, and generate strong annual cash flow of approximately $4 billion by the year 2014. The company also plans to continue focusing on innovation and expanding its robust pipeline by increasing investments in R&D at a compounded annual rate of at least 8 to 10 percent.

> "We remain committed to transforming our culture to one with a sustained focus on innovation and demonstrating the value of our products and therapies through clinical differentiation," says Robert L. Parkinson, Jr., chairman and chief executive officer. "We believe we have a balanced outlook and are well-positioned to achieve our results while making appropriate investments to enhance future growth and delivering value to shareholders."

> "We remain focused on delivering growth and achieving our long-term objectives," says Robert M. Davis, corporate vice president and chief financial officer. "Our financial performance and disciplined approach toward capital allocation allow us to provide an attractive return to our shareholders while expanding our innovative pipeline and global presence."

26.    On October 15, 2009, Baxter issued a press release reporting the Company's financial results for the third quarter of 2009. The Company reported BioScience revenue of $1.4 billion for the quarter. Baxter further forecast sales growth for the fourth quarter of 2009 of 6% to 8%, excluding the impact of foreign currency.

27.    Also on October 15, 2009, Baxter hosted a conference call in which the following statements were made:

| Rob Davis – Baxter VP and CFO | Moving onto plasma proteins, you may recall that our plasma protein portfolio includes a broad array of propriety and differentiated products including Feiba, an inhibitor therapy; ARALAST, a treatment for hereditary emphysema; and FLEXBUMIN, or albumin provided in a flexible plastic container. |
|---|---|

| | |
|---|---|
| | In the third quarter, global plasma protein sales were $331 million and declined by 2%. Excluding the impact of foreign currency, plasma protein sales increased 7%. Last year, significant tenders primarily for Feiba contributed to plasma protein growth of 37%, the highest quarterly growth in 2008. Excluding tenders, the timing of which can be uncertain, plasma protein sales increased by more than 15% including robust sales of albumin and ARALAST, both of which grew in excess of 20% of the quarter. |
| | In addition to a difficult comparison, growth was impacted by a change in the timing of plasma orders primarily in Eastern Europe and Latin America versus our expectations. We now expect these sales in the fourth quarter. |
| | To summarize, we continue to see strong demand and favorable year-on-year price improvements across the entire plasma protein portfolio. |
| | *          *          * |
| Mike Weinstein – JPMorgan Analyst | Okay, let me follow up with that because I've gotten (inaudible) in the middle of this by a bunch of different investors who just want to clarify **_in your view on the plasma protein side of the business, IVIG or other proteins, has anything changed relative to your view the health of the market or price of the market_**? |
| | (Emphasis added). |
| Rob Davis – Baxter VP and CFO | No. |
| | *          *          * |
| Bob Parkinson – Baxter Chairman, President & CEO | Our view of the market is this is still certainly a mid to high single digit if not closer to high single digit in terms of underlying market, Bruce. And on the pricing front, as you know, we're not going to comment on that in detail . . . . |
| | *          *          * |
| David Lewis – Morgan Stanley – Analyst | Good morning. Bob, there's been a lot of kind of consternation around pricing and through the balance of the year, Baxter remains extremely well insulated versus some of these macro concerns. So pricing aside, **_given_** |

| | *new competitors coming into the US market specifically for IVIG or any sort of GPO contracted dynamics, are you concerned at all about market share issues, not pricing for US plasma proteins or IVIG?* |
|---|---|
| Bob Parkinson – Baxter Chairman, President & CEO | *I would say not really.*  Look, we continue – one of the things that our improved inventories have allowed us to do is frankly be more proactive in terms of demand creations. We've discussed before PID is still highly underdiagnosed and treated even in developed and mature markets like US and Western Europe.  And our improved inventories have enabled us around the world to selectively invest in marketing programs and so on to capitalize on that. <br><br> *So there's no indication at all that certainly that we're losing market share and we don't plan on losing market share.* <br> (Emphasis added). |

28.    On January 28, 2010, Baxter issued a press release reporting the Company's financial results for the full year and fourth quarter of 2009 that stated, in part, the following:

**Company Provides Financial Outlook for Full-Year 2010 Including Double-Digit Earnings Growth**

DEERFIELD, Ill., January 28, 2010 – Baxter International Inc. (NYSE:BAX) today reported strong performance for the fourth quarter of 2009, and provided its financial outlook for the first quarter and full-year 2010.

\*        \*        \*

**First Quarter and Full-Year 2010 Outlook**

Baxter also announced today its guidance for the full year and first quarter of 2010.  For full-year 2010, Baxter expects sales, excluding the impact of foreign exchange, to grow 5 to 7 percent.  Including the benefit of foreign exchange, Baxter expects reported sales growth to increase 7 to 9 percent compared to 2009, based on current exchange rates.  The company also expects earnings per diluted share of $4.20 to $4.28, before any special items, and expects to generate cash flow from operations of approximately $2.9 billion.

For the first quarter of 2010, Baxter expects sales growth, excluding the impact of foreign exchange, of approximately 5 to 7 percent. Including the benefit of foreign exchange, the company expects reported sales growth of approximately 10 to 12 percent compared to the first quarter of 2009, based on current exchange rates. The company also expects earnings per diluted share of $0.92 to $0.94, before any special items.

<p style="text-align:center">*     *     *</p>

"Our 2010 guidance reflects balance across the businesses, continued global expansion, and our ability to deliver sustainable growth," said Robert M. Davis, corporate vice president and chief financial officer. "It is aligned with our long-range strategic and financial objectives, as we remain focused on delivering growth while making appropriate investments for the future."

29.     Also on January 28, 2010, Baxter hosted a conference call in which the following statements were made:

| Rob Davis – Baxter – CFO and Treasurer | In terms of individual business performance, let me start with BioScience. Global sales in the fourth quarter totaled approximately $1.5 billion and increased 12%. Excluding foreign currency, BioScience sales increased 7% compared to a very strong Q4 of 2008 when constant currency growth was 17%, the highest quarterly growth of that year. For the full year global BioScience sales grew 5% to $5.6 billion. Excluding foreign currency sales increased 10% with solid growth across all major product categories offsetting lower sales of our FSME vaccine, particularly in the first half of 2009. |
|---|---|
| | Within the product categories . . . . plasma proteins, which includes a broad array of proprietary and differentiated products including – FEIBA, an inhibitor therapy; ARALAST, a treatment for hereditary emphysema; FLEXBUMIN, or albumin provided in a flexible plastic container; as well as plasma derived Factor VIII. |
| | In the fourth quarter global plasma protein sales were $380 million and increased by 15%. Excluding the impact of foreign currency plasma protein sales increased 10%, primarily due to expected tenders that drove strong international sales. In the US growth of FEIBA and |

| | |
|---|---|
| | ARALAST offset a difficult comparison to last year when sales of this category grew 18%. |
| | For the full-year plasma protein sales totaled $1.3 billion and increased 17% on a constant currency basis as a result of strong underlying global demand and favorable year-on-year price improvements across the entire plasma protein portfolio. |
| | <div align="center">*    *    *</div> |
| | Finally, for the BioScience business we expect sales growth, excluding foreign currency, to be in the 6% to 8% range. First, we expect recombinant sales growth in the 6% to 8% range. Second, we expect plasma protein sales to grow in mid- to high-single-digits, and antibody therapy sales to grow in the mid-single-digit range. Third, we expect the regenerative medicine business to again grow in mid teens. |
| | <div align="center">*    *    *</div> |
| Bob Parkinson – Baxter Chairman, CEO, President | Well, first of all it's only been what, four months since our investor conference, ***but there's nothing that's changed since then that would suggest we would deviate from our long-term outlook, long-term aspirations.*** Obviously the guidance we provide of EPS growth in 2010 is right in line with the 11% to 13% compounded EPS growth that we projected over the LRP. |
| | So in the context of EPS growth, 2010 is just another year that I think supports and builds that long-term outlook. You've got a few puts and takes relative to the sales line in organic growth. And just to remind you and I think everyone else, the organic sales growth that – or the sales growth, compounded sales growth that we projected really doesn't reflect much of anything in terms of business development initiatives and so on. |
| | So we're hopeful that we'll be in a position to maybe do a few things this year as well that will support that top line. But, the EPS growth that we're guiding for 2010 in right in line with the messaging for the long-range plan we communicated in September. |
| | (Emphasis added). |
| | <div align="center">*    *    *</div> |
| Larry Keusch – | Okay. And then just a question on IVIG. I just want to |

<div align="center">12</div>

| | |
|---|---|
| Morgan Keegan – Analyst | make sure I understand. So if you guys are thinking *mid-single-digit growth there. If you could just give some color on how you're thinking about price and then kind of where are we with the contracts in terms of the tenders as you look at all of 2010? And then I guess a comment on market share, why you think you're losing some share at this point*. (Emphasis added). |
| Bob Parkinson – Baxter Chairman, CEO, President | *      *      *  <br><br>Relative to pricing I want to be limited in what I say. I mean, clearly pricing in the market right now is reasonably flat. Going forward I don't really want to comment on that given some of the situations that you're familiar with that have transpired. So I won't embellish beyond that in terms of price.  <br><br>In terms of volume, without getting too detailed, 2009, particularly the second half of the year, *there's really been a kind of a confluence of events that have gone on I think affecting both market volume and then also ours, which gets to your share question which I'll conclude with*. (Emphasis added).  <br><br>First of all, I do think there's been some modest softening in the underlying demand of the entire market due to the macroeconomic environment. While largely Baxter has been fortunate to be relatively unimpacted by the macroenvironment, I do think given how expensive this therapy is, individuals losing insurance, some things like that, I think it has had somewhat of a softening effect in terms of the underlying market growth in 2009.  <br><br>We also had the dynamic, as you know, earlier in the with one of the major competitors going private to become a public company. There are always dimensions that are associated with that kind of an event which complicate the market. I also think throughout the year there's been a balancing of the channel inventory with underlying demand, which I think as we go out the year has probably worked its way – worked its way through. |

|  | The other thing I would point out, particularly in our case where we took a fairly significant price increase in January in 2009, in anticipation of that there was a bit of a pre-buy I think from wholesalers to avoid the price increase late in 2008, which clearly didn't occur this year. So on a year-to-year comp basis that's had a bit of a downward effect. |
|  | And then finally in the last point, yes, I think we probably have lost a little bit of share. I don't think it's significant. And frankly, to the degree we have, it's probably share that we gained in '08 and moving in – even early into '09. I don't think there's any reason to believe that that's going to change much going forward. But I think the second half of the year we probably did lose back some of the share gain that we enjoyed in '08 and early '09. |
|  | So I'll stop there. I covered a lot of dynamics, but I think it's fair to say 2009 was kind of a transition year due to a lot of different dynamics. ***But again, the long-term prospects for this business continue to be very positive for a lot of reasons, not the least of which is antibody therapy as such a robust new product pipeline for us with the label expansion and new indications and new delivery systems and so on. So our long-term view continues to be very positive about this business. So hopefully that touched on the various elements, okay?*** |
|  | *        *        * |
| Bob Hopkins – Bank of America – Analyst | Okay, thank you. And then just to follow up one more question on antibody therapy for a quick second, just to make sure I understand exactly what you're saying. You guys are suggesting for Baxter mid-single-digit growth in a constant currency basis in 2010. And you're also expecting that's the growth rate for the market, is that right? |
| Rob Davis – Baxter – CFO and Treasurer | I think Bob – this is Rob – generally, yes. I mean we've talked about – Bob mentioned we saw maybe a little bit of softness and demand coming through the back half. I think we're seeing some of that recover even as we see data now. But to make sure we're conservative we're looking at the market more in that range. But I think longer-term we haven't changed our view that the mid- to |

| Rob Davis – Baxter – CFO and Treasurer (cont'd) | high-single-digit growth, it's going to get there and I wouldn't be surprised if you see us getting back to that as we move into the rest of 2010 in the back half. |
|---|---|
| | *     *     * |
| David Lewis – Morgan Stanley – Analyst | I guess – I think what investors would like to know is heading into 2010 is your guidance predicated on stable share and is your guidance predicated on inventory levels that are flat with the fourth quarter? I.e., what's giving you the confidence that we don't see further erosion in those two dynamics? |
| Rob Davis – Baxter – CFO, Treasurer | The answer to both the questions is, yes, we are assuming generally stable share throughout 2010, as Bob mentioned. Some of the share loss we think we've seen in the back half of 2009 is giving back share gains we had in the past years. As you know, there were competitive issues with the product in the marketplace. |
| | So we do expect stable share and we do believe that we're starting to see more normalized inventory levels in the channel. So hopefully some of the noise that's created in the back half of 2009 versus 2010, we're not expecting to see that within the – back half of 2009 versus the first half of 2009 – sorry about that. But we're not expecting to see that in 2010. |

30. The true facts, which were known by the defendants but concealed from the investing public during the Class Period, were as follows:

(a) There was a material decline in the demand for the Company's premium-priced blood plasma products;

(b) Baxter's relationship with certain customers was materially deteriorating, causing customers to purchase products sold by Baxter competitors;

(c) Baxter's blood plasma business was losing material market share;

(d)     As a result of (a)-(c) above, Baxter's guidance for 2010 lacked a reasonable basis; and

(e)     Defendants failed to disclose that Baxter was not complying with the June 2006 consent decree it had entered into with the FDA concerning its COLLEAGUE pumps.

## VI.     THE TRUTH BEGINS TO EMERGE

31.     On April 22, 2010, Baxter issued a press release reporting the Company's financial results for the first quarter of 2010 and providing updated guidance for the second quarter and full year 2010 that stated, in part, the following:

> **Second Quarter and Full-Year 2010 Outlook**
>
> Baxter also announced today its guidance for the second quarter of 2010 and lowered its guidance for the full year.
>
> Previously, Baxter expected full-year 2010 sales growth, excluding the impact of foreign exchange, of 5 to 7 percent (or 7 to 9 percent including foreign exchange); full-year earnings per diluted share of $4.20 to $4.28, before any special items; and cash flow from operations of approximately $2.9 billion.
>
> For full-year 2010, Baxter's revised outlook includes sales growth, excluding the impact of foreign exchange, of 1 to 3 percent (or 3 to 5 percent including the benefit of foreign exchange) and earnings, before any special items, of $3.92 to $4.00 per diluted share.  This outlook now includes the full-year impact of U.S. healthcare reform legislation enacted in the first quarter.  In addition, Baxter now expects to generate cash flows from operations of approximately $2.7 billion . . . .
>
> For the second quarter of 2010, the company expects sales growth, excluding the impact of foreign exchange, of 0 to 2 percent (or 3 to 5 percent including the benefit of foreign exchange), and earnings, before any special items, of $0.90 to $0.93 per diluted share.

32.     Also on April 22, 2010, Baxter hosted a conference call in which the following statements were made:

| | |
|---|---|
| Bob Parkinson – Baxter – Chairman, CEO, President | So on that point, let me jump immediately to the obvious news this morning, which is our decision to lower guidance for the year from $4.20 to $4.28 a share to $3.92 to $4.00 per share. While Rob will provide more details in just a few minutes, it is clearly appropriate for me to address the basis of our decision to lower guidance at the outset this morning.<br><br>There is really primarily two key factors that led us to lowering our outlook for the year. . . .<br><br>*The second factor is really I guess what I would describe as the more protracted and pronounced impact of the transition in the global plasma protein market, particularly with the emphasis in the US. We will clearly discuss this in more detail in the Q&A this morning*, but what I'd like to do is provide some color as it relates to the existing market dynamics, the basis of our projections for the remainder of the year, but also our longer-term view regarding this business.<br><br>*In the short term, it is evident that the market is growing more slowly than our earlier estimates, particularly in the US. As I commented last quarter, we also believe that we've lost some unit share, primarily business we gained in late 2008 or early 2009 due to some competitive supply issues.*<br><br>As you know, we've not taken prices up this year on Gammagard Liquid, but *it remains the premium brand and is frankly subject to some competitive vulnerability, particularly in select segments of the market. So as a result, we have and we will, on a targeted basis, selectively touch up prices.*<br><br>While I continue to believe that we and the market more broadly are going through a transitionary period, we, *in retrospect, were clearly overly optimistic about the short-term market growth, our ability to retain market share and the near-term impact on the market of deploying additional sales resources for those indications that remain undiagnosed and untreated*. (Emphasis added). |
| | * * * |

17

| | |
|---|---|
| Bob Parkinson – Baxter – Chairman, CEO and President | But let's take a step back and talk about the market, how we've gotten to this point, what we see going forward. Look, the facts are we miscalled this, okay? And believe me, we've spent a lot of time challenging ourselves, asking the question why is that.<br><br>I think there are several factors that are involved here, which are instructive and helpful that obviously as we not only forecast going forward, but as we implement other commercial strategies, not only to mitigate the effect of it, but to turn it around.<br><br>As we look at the market today, Mike, clearly the market is growing much more slowly than we had anticipated, even as recently as pulling together our plan for 2010 and obviously providing the guidance for 2010. You know in this particular market it is sometimes challenging. We have less than perfect market information. It is not like the pharma business, where you got IMS data and you can track things in a much more definitive way. So it is a little bit elusive.<br><br>Our best guess is that the US market – and let's just talk about the US market, because that is where most of this is centered – it is probably growing no more than 1% or 2% right now. Okay? So we clearly overcalled the market growth. And I think one of the reasons that we did is if you go back in time, let's say a year ago – because of our year-to-year comps, obviously are very – a year ago, right now, we were having a very different discussion – very robust results, frankly, in excess of what we had projected. And the challenge then at that point was how much did we interpret that to be more robust market growth and how much of that was share gains. And again, this gets to – and this isn't an excuse – it is just giving you the facts, and you know most of this – less than perfect market information.<br><br>I think we interpreted our strength a year ago, late 2008 and early 2009, to be more a function of more significant market growth as opposed to, I think, we were gaining more share at that time, given the fact that one of the competitors was having some supply issues in the market. |

So I think that is a historical fact that is relevant.

The other thing was going on to the market in general, as you know, was we were moving, over the course of really about two years, from being in a fairly dramatic product shortage in the market to then moving more recently, of course, to adequate supply, even leading to the point where all of us now are adding sales resources and so on, as you know.

And then of course, mixed in with all of that was the balancing in the supply chain and the distribution channel, and ascertaining what was fundamental demand and what was really rebalancing of channel inventory became the third factor.

So simply – just to summarize simply, we've overcalled the market growth.  It is growing at a lesser rate, and I think there are some environmental factors, clearly, that are leading to that, which I won't expand on.  We can follow up on that if you'd like.

The market is growing much slower than what we had anticipated.  As I acknowledged on our last call, we've lost some market share.  It is largely share, I think, that we gained in late 2008 and early 2009.  And since our last call, we've lost, I think, somewhat more market share as well.

As you know, we are the premium brand, as I had mentioned in my prepared comments.  So we are – we have and we are going to continue to selectively **touch up prices** where necessary to keep our volume, and we are doing that, all at the same time, as you know, we are expanding sales force.

So that is probably about the best I can do in addressing the various dynamics, of which there are several.  And on all fronts, we have less than perfect information.

33.     On this news, Baxter's stock declined $7.82 per share to close at $51.13 per share, on volume of more than 50 million shares.

34.     On May 3, 2010, Baxter issued a press release announcing it was recalling the COLLEAGUE pumps in the United States. The release provided in part:

> Baxter Healthcare Corporation today announced that it will recall COLLEAGUE infusion pumps from the U.S. market pursuant to an order under its existing June 2006 consent decree with the U.S. Food and Drug Administration (FDA). Baxter will work with the FDA to ensure that the recall process provides customers appropriate alternatives for supporting patients' needs.
>
> As previously disclosed, Baxter entered into a consent decree with FDA under which the company has been pursuing remediation of the infusion pumps. The decree permits FDA to require the recall of the pumps, and FDA has communicated to the company that it will require such a recall, with the company providing monetary consideration or replacement pumps to customers on a timeline to be determined with FDA and based on medical need. Baxter intends to work with FDA to minimize disruption to healthcare facilities using COLLEAGUE pumps. Baxter anticipates that, among alternatives to be provided to customers, the company will offer to exchange Baxter's Sigma SPECTRUM infusion pumps for COLLEAGUE infusion pumps without charge to customers.
>
> The consent decree permits Baxter to propose alternative actions to achieve the FDA's objectives under the decree, which the company intends to do. The final nature of the recall and offer to customers remain subject to that ongoing dialogue.
>
> Once final, Baxter will notify customers and make information available on www.baxter.com.
>
> Notwithstanding that uncertainty, ***the company currently anticipates that it will record a pre-tax special charge of $400 to $600 million in the first quarter for the reasonably estimable cost of the recall.*** The company is not otherwise revising its earnings guidance for the year in connection with the recall.

(Emphasis added).

35.     Subsequently, on May 3, 2010, the FDA issued a statement concerning

Baxter's recall of the COLLEAGUE pumps, which stated in part:

> The U.S. Food and Drug Administration sent a letter to Baxter Healthcare Corp. on April 30 ordering the company to recall and destroy all of its Colleague Volumetric Infusion Pumps (Colleague pumps) currently in use in the United States. ***This action is based on a longstanding failure to correct many serious problems with the pumps.*** The FDA believes there may be as many as 200,000 of those pumps currently in use.
>
> Additionally, the FDA is ordering the company to provide refunds to customers or replace pumps at no cost to customers [to] help defray the cost of replacement.
>
> Infusion pumps are devices that deliver fluids, including nutrients and medications, into a patient's body in a controlled manner. They are widely used in hospitals, other clinical settings and, increasingly, in the home because they allow a greater level of accuracy in fluid delivery.
>
> Hospitals and other users of Baxter's Colleague pumps will be receiving further instruction and information from Baxter and the FDA regarding their transition.
>
> The FDA has been working with Baxter since 1999 to correct numerous device flaws. Since then, Colleague pumps have been the subject of several Class I recalls for battery swelling, inadvertent power off, service data errors, and other issues.
>
> In June 2006, the FDA was [sic] obtained a consent decree of permanent injunction in which Baxter agreed to stop manufacturing and distributing all models of the Colleague pump until the company corrected manufacturing deficiencies and until devices in use were brought into compliance. ***Since then, Baxter has made numerous changes to the Colleague pumps but these changes have not corrected the product defect leading to the permanent injunction.***
>
> On April 8, 2010, Baxter submitted a proposed correction schedule to the FDA that stated that Baxter did not plan to begin the latest round of corrections to the adulterated and misbranded pumps until May 2012. The proposal also stated that Baxter does not anticipate completion of the proposed corrections until 2013. On that schedule, a device with known safety concerns would remain in use on patients needing specialized care until 2013. FDA found this proposal unacceptable. The 2006 consent decree gave FDA authority to take any action it deemed appropriate. The FDA has determined that this action is necessary, as Baxter has failed to adequately correct,

within a reasonable timeframe, the deficiencies in the Colleague infusion pumps still in use.

Therefore the FDA is now ordering Baxter to:
- Recall and destroy all Colleague infusion pumps.
- Reimburse customers for the value of the recalled device
- Assist in finding a replacement for these customers.

Infusion pumps, including the Baxter Colleague models, have been the source of persistent safety problems. In the past five years, the FDA has received more than 56,000 reports of adverse events associated with the use of infusion pumps. Those events have included serious injuries and more than 500 deaths. Between 2005 and 2009, 87 infusion pump recalls were conducted to address identified safety concerns, according to FDA data.

An FDA analysis of these adverse events has uncovered software defects, user interface problems and mechanical and electrical failures. Problems with infusion pumps are not confined to one manufacturer or one type of device.

In response, last month the FDA announced a new initiative to address safety problems associated with infusion pumps. As part of its initiative, the FDA is moving to establish additional premarket requirements manufacturers will be expected to meet, in part through static testing in FDA's facilities before device submissions. The FDA is also holding a May public workshop on infusion pump design, and the agency is raising public awareness of the issue among health care workers and patients.

(Emphasis added).

36.    On this news, Baxter's stock declined $2.42 per share to close at $45.08 per share on May 4, 2010, a decline of approximately 5%, on high volume.

## VII.    LOSS CAUSATION/ECONOMIC LOSS

37.    During the Class Period, as detailed herein, defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Baxter's securities and operated as a fraud or deceit on Class Period purchasers of Baxter securities by misrepresenting the Company's business prospects and certain negative

trends alleged above. Later, however, when defendants' prior misrepresentations were disclosed and became apparent to the market, the price of Baxter securities declined precipitously as the prior artificial inflation came out of Baxter's securities. As a result of their purchases of Baxter's securities during the Class Period, plaintiff and other members of the Class suffered economic loss, *i.e.*, damages under the federal securities laws.

## VIII. <u>FRAUD-ON-THE-MARKET DOCTRINE</u>

38.     At all relevant times, the market for Baxter securities was an efficient market for the following reasons, among others:

(a)     The Company's common stock met the requirements for public listing and was listed and actively traded on the NYSE, a highly efficient market;

(b)     As a regulated issuer, the Company filed periodic public reports with the SEC; and

(c)     The Company regularly issued press releases which were carried by national news wires. Each of these releases was publicly available and entered the public marketplace.

39.     As a result, the market for the Company's securities promptly digested current information with respect to Baxter from all publicly available sources and reflected such information in the price of the Company's securities. Under these circumstances, all purchasers of the Company's securities during the Class Period suffered similar injury through their purchase of the securities of Baxter at artificially inflated prices and a presumption of reliance applies.

## IX.    ADDITIONAL SCIENTER ALLEGATIONS

40.    As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading.  Furthermore, they knew that such statements or documents would be issued or disseminated to the investing public. Defendants knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

41.    Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public. The ongoing fraudulent scheme described in this complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

42.    Defendants had the motive and opportunity to perpetrate the fraudulent scheme and course of business described herein because the Individual Defendants were the most senior officers of Baxter, issued statements and press releases on behalf of Baxter and had the opportunity to commit the fraud alleged herein.

## X.    NO SAFE HARBOR

43.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint.  Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking

statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Baxter who knew that those statements were false when made.

### FIRST CLAIM FOR RELIEF
### For Violation of Section 10(b) of the 1934 Act
### and Rule 10b-5 Against All Defendants

44.     Plaintiff incorporates ¶¶ 1-43 by reference.

45.     During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were materially false and misleading in that they contained material misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

46.     Defendants violated Section 10(b) of the 1934 Act and Rule 10b-5 in that they:

(b)     Employed devices, schemes and artifices to defraud;

(c)     Made untrue statements of material facts or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made not misleading; or

(d)     Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Baxter securities during the Class Period.

47.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Baxter's securities. Plaintiff and the Class would not have purchased Baxter's securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements and material omissions.

48.     As a direct and proximate result of these defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of Baxter securities during the Class Period.

<div align="center">

**SECOND CLAIM FOR RELIEF**
**For Violation of Section 20(a) of the 1934 Act**
**Against the Individual Defendants**

</div>

49.     Plaintiff incorporates ¶¶ 1-43 by reference.

50.     The Individual Defendants acted as a controlling person of Baxter within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to

copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51.    In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

52.    As set forth above, Baxter and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions each as a controlling person, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Baxter's and the Individual Defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for judgment as follows: declaring this action to be a proper class action; awarding damages, including interest; awarding reasonable costs, including attorneys' fees; and such equitable/injunctive relief as the Court may deem proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: November 5, 2010

KAPLAN FOX & KILSHEIMER LLP

By:_____/s/ Gary L. Specks_____

Gary L. Specks
423 Sumac Road
Highland Park, IL 60035
phone: 847.831.1585
fax: 847.831.1580

Frederic S. Fox
Donald R. Hall
Jeffrey P. Campisi
850 Third Avenue
New York, New York 10022
Tel: (212) 687-1980
Fax: (212) 687-7714

*Attorneys for Plaintiff*



## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, James Gregory III, hereby certify and swear as follows:

1. I have reviewed the attached Complaint against Baxter International Inc. alleging violations of the securities laws and authorize its filing;

2. I am willing to serve as a representative party on behalf of a class, or to be a member of a group representing a class, including providing testimony at deposition and trial, if necessary;

3. I have not within the 3-year period preceding the date hereof sought to serve, or served, as a representative party on behalf of a class in an action brought under the federal securities laws, unless noted hereafter:

The following is a description of my transactions during the class period specified in the Complaint in the common stock of Baxter International, Inc.:

| Transaction Type | Trade Date | Number of Shares | Price Per Share |
|---|---|---|---|

SEE ATTACHED:

4. I did not purchase common stock of Baxter International Inc. at the direction of my counsel or in order to participate in any private action under the federal securities laws;

5. I will not accept any payment for serving as a representative party on behalf of a class beyond my pro rata share of any recovery, except as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

_____
JAMES GREGORY III

Date: September 23, 2010

| SECURITY NAME | TRANSACTION | TRADE DATE | SHARES | PRICE PER SHARE |
|---|---|---|---|---|
| BAXTER INTERNATIONAL INC | BUY (Reinvest Dividend) | 10/2/2009 | 0.9707 | $55.9190 |
| BAXTER INTERNATIONAL INC | BUY (Reinvest Dividend) | 1/6/2010 | 1.0444 | $58.2443 |
| BAXTER INTERNATIONAL INC | BUY | 2/4/2010 | 220 | $56.9500 |
| BAXTER INTERNATIONAL INC | BUY | 4/12/2010 | 75 | $58.0000 |
| BAXTER INTERNATIONAL INC | BUY | 4/12/2010 | 100 | $58.0000 |
| BAXTER INTERNATIONAL INC | SELL | 1/22/2010 | -0.7997 | $59.0008 |
| BAXTER INTERNATIONAL INC | SELL | 1/22/2010 | -10 | $59.0008 |
| BAXTER INTERNATIONAL INC | SELL | 1/22/2010 | -100 | $59.0010 |
| BAXTER INTERNATIONAL INC | SELL | 1/22/2010 | -100 | $59.0005 |
| BAXTER INTERNATIONAL INC | SELL | 3/3/2010 | -220 | $59.2000 |